UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACY RENEE TREZONA, | Case No. 1:21-cv-00792-EPG |
| Plaintiff, | |
| v. | FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | (ECF No. 11) |

This matter is before the Court on Plaintiff Stacy Renee Trezona's ("Plaintiff") complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration. The parties have consented to entry of final judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 5, 8, 14.)

The matter was taken under submission on the parties' briefs without a hearing. Having reviewed the record, the administrative transcript, the parties' briefs, and the applicable law, the Court finds as follows.

**I.    DISCUSSION**

Plaintiff makes the following arguments:

1. The ALJ improperly analyzed the medical opinions of treating physician Alexandra Duffy, M.D. and consultative examiner Megan Stafford, Psy. D;

///

2. The ALJ improperly rejected Plaintiff's subjective symptom testimony;

3. The ALJ improperly rejected the lay witness testimony of Sherry Johnson; and

4. The ALJ's Step Four and Step Five findings are not supported by substantial evidence.

(ECF No. 11.)

**A.  Medical Opinions**

1.  Legal Standards

This claim is governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017.[1] 20 C.F.R. §§ 404.1520c, 416.920c; (ECF No. 19, p. 17; ECF No. 22, pp. 4-5). The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

Recently, the Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, No. 21-35458, 2022 WL 1195334, at *6 (9th Cir. Apr. 22, 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at *1. "Substantial evidence means more than a

---

[1] Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits on January 17, 2019. (A.R. 210-11.)

2

scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 2022 WL 1195334, at *6.

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2).

*Id.*

As the Ninth Circuit also noted, "[t]he revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors." *Woods*, 2022 WL 1195334, at *6 (citing § 404.1520c(b)(2)). "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.' *Id.* § 404.1520c(b)(3). In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id.*

With these legal standards in mind, the Court reviews the ALJ's weight given to Dr. Duffy and Dr. Stafford's opinions.

2.  Dr. Duffy's Opinions

Dr. Duffy completed a Physical Residual Functional Capacity Questionnaire dated September 5, 2017. (A.R. 570-75.) Dr. Duffy indicated that Plaintiff's diagnosis was cervical dystonia, her prognosis was unknown, and her symptoms included abnormal twisting/posturing of

3

the neck, pain, pulling, tightness from the neck into the arm, difficulty using her left arm, and tremors. (A.R. 570.) Plaintiff experienced persistent daily continuous pain with fluctuating severity but mostly moderate to severe and worse with activity. (*Id.*) Dr. Duffy opined that Plaintiff could sit and stand for less than two hours in an eight hour workday. (A.R. 572.) She did not require a cane or other assistive device when standing/walking. (*Id.*) Plaintiff would sometimes need to take unscheduled breaks during an eight-hour workday, but Dr. Duffy did not specify how often this would occur. (*Id.*) Plaintiff could occasionally twist, stoop/bend, crouch/squat, climb ladders, and climb stairs. (A.R. 575.) She had significant limitations with reaching, handling, or fingering, but Plaintiff did not provide a percentage of time that Plaintiff could use her hands, fingers, or arms. (*Id.*) Dr. Duffy responded to several of the form questions with "unknown." (*See* A.R. 570-75.)

Dr. Duffy also completed a Residual Functional Capacity Assessment (Cervical Dystonia) dated August 14, 2019. (A.R. 576-77.) Dr. Duffy opined that Plaintiff could sit for five-to-ten minutes and stand for five minutes at a time, and could sit and stand for a combined total of less than two hours if she were able to alternate between the two. (A.R. 576-77.) Plaintiff would need to rest for a total of ten minutes every fifteen minutes during an eight-hour workday. (A.R. 577.) She should use a cane or other assistive device when walking. (*Id.*) Dr. Duffy further opined that Plaintiff could occasionally lift less than ten pounds and can never lift ten pounds or more. (*Id.*) Her impairments limit the amount of repetitive reaching she can do and she is limited in the use of her hands. (*Id.*) Plaintiff could never perform simple grasping, pushing and pulling, or fine manipulation with her left hand and could occasionally perform these functions with her right hand. (*Id.*) She would be unable to go to work more than three times per month as a result of her medical problems. (*Id.*)

Additionally, Dr. Duffy submitted a letter dated April 10, 2020. (A.R. 578-79.) She opined that "a patient may be capable of working on some days, but typically over time, would have many days where work would not be tolerated." (*Id.*) She believed Plaintiff's self-description of pain and other more subjective symptoms were "consistent with the disease process" and nothing caused her to question Plaintiff's credibility. (A.R. 579.) Dr. Duffy further opined:

4

> It also should be noted that should this patient attempt to return to work it is likely that the various symptoms would worsen. The reasons are twofold. First, stress, including the stress associated with virtually all employment, will tend to aggravate the symptoms. Second, patients with spasmodic torticollis tend to structure their waking hours with periods of rest and relax during the day. Fatigue tends to aggravate the symptoms associated with spasmodic torticollis.

(*Id.*)

In weighing Dr. Duffy's opinions, the ALJ reasoned as follows:

> Alexandra Duffy, M.D., the claimant's neurologist, opined that the claimant was unable to perform even less than sedentary work [Exhibits B11F, B12F, and B13F]. The undersigned finds the doctor's opinions to be unpersuasive because they are not well-supported by the doctor's own treatment notes and objective findings. In addition, the doctor's opinion appears to be primary [sic] based upon subjective complaints as opposed to objective findings and is inconsistent with the evidence of record, indicating improvement with treatment and limited positive diagnostic findings and findings upon physical examinations. Overall, the medical record shows no more than moderate objective findings, which are well-accommodated for by the limitations in the residual functional capacity.

(A.R. 22.)

The ALJ discounted Dr. Duffy's opinions because they were not supported by her own treatment notes and objective findings, and because they were inconsistent with the record as a whole. While the ALJ did not cite to any records in connection with this finding, the following paragraphs contain a summary of medical records, including Dr. Duffy's treatment notes. (A.R. 22-23.) For example, the ALJ cited to Dr. Duffy's treatment notes indicating Plaintiff reported improvement in her symptoms without any side effects when treated with botulinum toxin injections. (A.R. 23.) Physical examination revealed "mild left arm internal rotation, a right lateral tilt with the head, a left tort retrocollis, a left shoulder elevation, and occasional tremor with pulling to the left." (*Id.*) Another examination revealed "moderate left torticollis and right laterocollis, a prominent retrocollis and left shoulder elevation, and a prominent no-no-tremor with a marked left jerky motion. She had a mild limitation on range of motion." (*Id.*) The ALJ also cited to MRI results showing "moderate acromioclavicular osteoarthritis" and "moderate left foraminal stenosis." (A.R. 22.) This evidence shows that Plaintiff has impairments but does not appear to support the severity of Dr. Duffy's opined functional limitations, which included that Plaintiff could only sit for five-to-ten minutes and stand for five minutes at a time, could sit and

stand for a combined total of less than two hours if she were able to alternate between the two, and would need to rest for a total of ten minutes every fifteen minutes during an eight-hour workday. (A.R. 576-77.) Thus, the ALJ's findings that Dr. Duffy's opinions were inconsistent with her own treatment notes and with the objective medical evidence as a whole are legally sufficient and supported by substantial evidence.

The ALJ also discounted Dr. Duffy's opinions because they were primarily based on Plaintiff's subjective complaints. However, there is nothing in the ALJ's decision explaining the basis for this finding, and Dr. Duffy's opinions themselves do not indicate that they were based on Plaintiff's subjective complaints. Indeed, Dr. Duffy's August 14, 2019 opinion states that her diagnosis is based on clinical examination. (*See* A.R. 576.) Nonetheless, any error in connection with this finding is harmless because the ALJ provided other valid reasons for discounting Dr. Duffy's opinions. *See, e.g.*, *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("So long as there remains 'substantial evidence supporting the ALJ's conclusions ...' and the error 'does not negate the validity of the ALJ's ultimate ... conclusion,' such is deemed harmless and does not warrant reversal." (quoting *Batson v. Comm'r. of Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir. 2004)).

Accordingly, the Court finds that the ALJ's reasons for the weight given to Dr. Duffy's opinions are legally sufficient and supported by substantial evidence.

3. <u>Dr. Stafford's Opinion</u>

Consultative examiner Dr. Stafford completed a psychological evaluation of Plaintiff on April 2, 2019. (A.R. 418.) Dr. Stafford diagnosed Plaintiff with Unspecified Depressive Disorder and Unspecified Anxiety Disorder. (A.R. 421.) Dr. Stafford opined that Plaintiff's prognosis was fair and her problems may improve with treatment over time, including psychotherapy and psychotropic medication. (*Id.*) Plaintiff's abilities to perform detailed and complex tasks and accept instructions from supervisors were mildly impaired. (A.R. 422.) Her abilities to interact with co-workers, supervisors, and the public, maintain regular attendance in the workplace, complete a normal workday without interruptions from a psychiatric condition, and deal with the usual stress encountered in the workplace were moderately impaired. (*Id.*)

As to Dr. Stafford's opinion, the ALJ reasoned:

> Megan Stafford, Psy.D., performed a mental evaluation of the claimant at the request of the agency on April 2, 2019. Dr. Stafford diagnosed the claimant with unspecified depressive disorder and unspecified anxiety disorder. The doctor found the claimant to have moderate limitations in her mental work-related abilities [Exhibit B5F].
>
> The undersigned finds the opinion of Dr. Stafford to be unpersuasive because the doctor's opinion is not well-supported by her own generally normal findings upon mental status examination of the claimant. In addition, the doctor's opinions is inconsistent with the claimant's limited mental health treatment, as the record shows that she primarily only received medication treatment prescribed by her primary care provider and the primary care treatment notes do not indicate significant subjective complaints [Exhibit 9F]. Furthermore, the doctor's opinion is inconsistent with generally normal mental status examinations performed by the claimant's therapist.
>
> The claimant informed Dr. Stafford that she had no suicide attempts, psychiatric hospitalizations, and current suicidal ideation. She was prescribed psychotropic medication by her primary care provider. She last participated in psychotherapy in 2016, though she had an initial psychotherapy appointment scheduled for the end of the month [Exhibit B5F].

(A.R. 18-19.)

The ALJ's reasons for discounting Dr. Stafford's opinion are not supported by substantial evidence. Although the ALJ described Dr. Stafford's examination findings as "generally normal," Dr. Stafford described Plaintiff's mood and affect as follows:

> The claimant's mood appeared dysthymic and her affect was restricted. She appeared to be in physical pain. When asked her current mood, she stated, "A little anxious. I'm in pain. I feel a little upset like I could cry easily."

(A.R. 420.) Dr. Stafford described Plaintiff's prognosis as "fair" and recommended she receive treatment in the form of psychotherapy and psychotropic medication. (A.R. 421.) These examination findings are consistent with the opined mild and moderate limitations in Dr. Stafford's opinion and therefore this finding was in error.

The ALJ next discounted Dr. Stafford's opinion because it was "inconsistent with the claimant's limited mental health treatment" and Plaintiff "only receiv[ed] medication treatment prescribed by her primary care provider and the primary care treatment notes do not indicate significant subjective complaints." (A.R. 18.) However, the source of the prescription does not appear to have any bearing on whether Plaintiff's treatment can be considered limited. The primary care treatment notes also include multiple notations of reports of anxiety, including

7

severe anxiety, and a history of depression. (*See, e.g.,* A.R. 479, 486, 502, 505, 511.) This course of treatment again appears to be consistent with the mild and moderate limitations in Dr. Stafford's opinion, as well as her recommendation that Plaintiff would benefit from additional treatment. Thus, the ALJ's finding was in error.

Finally, the ALJ discounted Dr. Stafford's opinion as inconsistent with the "generally normal" examinations from Plaintiff's therapist. (A.R. 18.) However, treatment notes describe Plaintiff's mood as anxious, flat, depressed, guarded, and withdrawn. (A.R. 438, 441, 444.) She was diagnosed with major depressive disorder, recurrent episode, moderate and generalized anxiety disorder. (A.R 445.) Again, these findings are consistent with Dr. Stafford's opinion. The ALJ therefore erred in discounting Dr. Stafford's opinion on this basis.

For the foregoing reasons, the Court finds that the weight given to Dr. Stafford's opinion is not supported by substantial evidence.

**B.      Subjective Symptom Testimony**

1.      Legal Standards

The Ninth Circuit has provided the following guidance regarding assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony ... simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). In weighing a claimant's credibility, an ALJ may consider, among other things, the claimant's reputation for truthfulness, inconsistencies either in the claimant's testimony or between her testimony and her conduct, the claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the

claimant's symptoms. *Thomas v. Barnhart,* 279 F.3d 947, 958-59 (9th Cir. 2002) (citation omitted).

  2. <u>Analysis</u>

Given that there is objective medical evidence of an underlying impairment, the Court examines whether the ALJ rejected Plaintiff's subjective symptom allegations by offering specific, clear, and convincing reasons.

The ALJ found as follows regarding Plaintiff's subjective symptom testimony:

> The claimant, born on August 20, 1965, is currently fifty-five years old. She alleges an onset date of disability of December 27, 2017. She alleges disability on the basis of cervical dystonia and spondylosis, degenerative disc disease, nerve damage to left hand and shoulder, left rotator cuff tear, spasmodic torticollis, and depression. The claimant alleges experiencing chronic pain, spasms, muscle tightness, tremors, and a limited range of motion. She claims that she needs to rest several times per day. She claims that her conditions affect her ability to lift, bend, stand, reach, walk, sit, climb stairs, remember, complete tasks, concentrate, and use her hands. The claimant alleges that she uses a pillow support daily when sitting, reclining, and driving. She claims that her activities of daily living are limited due to pain [Exhibits B3E2, B4E, B8E7, B9E6, B12E, and testimony].
>
> …
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(A.R. 21). The ALJ then proceeded to discuss the opinion evidence and other medical evidence of record.

The ALJ erred in discounting Plaintiff's subjective symptom testimony. An ALJ properly discounts credibility by making specific credibility findings that are properly supported by the record and sufficiently specific to ensure a reviewing court that she did not "arbitrarily discredit" the testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991). Here, the ALJ only made a single, generalized statement that the claimant's statements were not credible. This was error. *See, e.g., Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1102-03 (9th Cir. 2014) (holding that an ALJ erred by making "only the single general statement that 'the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not

9

credible to the extent they are inconsistent with the above residual functional capacity assessment.'"); *Brown-Hunter,* 806 F.3d at 493 (finding that an ALJ erred because she "stated only that she found, based on unspecified claimant testimony and a summary of medical evidence," that the claimant's impairments were less serious than alleged).

While the ALJ did include a summary of the medical evidence following his description of Plaintiff's testimony, he did not offer any explanation as to how this evidence undermined Plaintiff's credibility. Additionally, subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence[.]" *Rollikns v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001).

The Commissioner argues that the ALJ discounted Plaintiff's testimony based on her activities of daily living, the opinion evidence, and prior administrative medical findings. While the ALJ states that he considered the medical opinions and prior administrative medical findings, there is nothing connecting this to Plaintiff's testimony or discussing why this evidence undermines her complaints. Additionally, there does not appear to be any discussion of Plaintiff's activities of daily living at all, with the exception of the ALJ's description of Plaintiff's testimony. Notably, the Commissioner does not cite to or quote any portions of the ALJ's decision in support of this argument. The Court may only consider the reasons provided by the ALJ, and there is nothing in the ALJ's decision indicating he discounted Plaintiff's testimony on these bases. *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009); "Longstanding principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

**C. Remedy**

The Court has the discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;

10

and (3) if the improperly discredited evidence were credited as true, the ALJ
would be required to find the claimant disabled on remand.

*Garrison v. Colvin,* 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

Here, the record has been fully developed and further administrative proceedings would serve no useful purpose. In this regard, the record includes Plaintiff's medical records, medical opinions from the State agency physicians, Plaintiff's treating physician, and a consultative examiner, as well as Plaintiff's description of her condition and symptoms and their resulting effects. As discussed above, the ALJ has failed to provide legally sufficient reasons for rejecting Dr. Stafford's opinion as well as Plaintiff's allegations regarding the severity and limiting effects of her symptoms. Dr. Stafford opined that Plaintiff was moderately impaired in her ability to maintain regular attendance and complete a normal workday without interruptions. (A.R. 422.) At the hearing, Plaintiff testified that she takes one to two naps per day due to fatigue. (A.R. 75.) The vocational expert testified that there would be no work available if Plaintiff was absent two-to-three days per month or if Plaintiff needed to take a nap or two naps on an ongoing basis and would be off task 15-to-20 percent of the time. (A.R. 80.) Thus, if the improperly discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand.

The Commissioner primarily argues that the credit-as-true rule is inapplicable because of conflicting evidence in the record in the form of the ALJ's reliance on prior administrative medical findings. (ECF No. 12 at 15.) However, the ALJ found that the presumption of continuing disability was rebutted in this case because Plaintiff changed age categories and there was new and material evidence related to her impairments. (A.R. 15.) Additionally, while the ALJ stated that he considered the prior administrative findings, he did not give them any specific evidentiary weight, and did not include any discussion of their impact beyond these few generalized statements. (A.R. 21.) Therefore, the prior administrative medical findings do not preclude application of the credit-as-true rule.

Moreover, the record as a whole does not create serious doubt as to whether Plaintiff is, in fact, disabled within the meaning of the Social Security Act. In these circumstances, the Court declines to remand this case for further proceedings and will reverse the Commissioner's decision and award benefits.[2]

## II.     CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED:

1. The decision of the Commissioner of the Social Security Administration is reversed;
2. The matter is remanded for the immediate award of benefits; and
3. The Clerk of Court shall enter judgment in favor of Plaintiff and shall close this case.

IT IS SO ORDERED.

Dated:   **May 25, 2022**                              /s/ Erica P. Grosjean
                                                    UNITED STATES MAGISTRATE JUDGE

---

[2] As the Court is reversing and awarding benefits for the reasons discussed herein, the Court declines to address Plaintiff's arguments regarding the lay witness testimony and the ALJ's Step Four and Step Five findings.